Alexander Del Giorno, J.
These are two claims, one by Margaret A. Miller to recover damages for personal injuries caused by the alleged negligence of the State, and the other a derivative action by her husband, Warner Miller, to recover for medical expenses and loss of services and society of his wife. By stipulation the two claims were tried together.
It is claimed that on November 6, 1955, at about 9:00 p.m., the two claimants were returning from the home of the sister of the claimant Margaret. They had had dinner there and were walking, Margaret carrying a bag with foodstuff in each hand plus her handbag, and her husband carrying one bag. They were walking easterly on State Street, and when they came to the intersection of State and Swan they turned north on Swan to go toward Washington Avenue. At that corner there was a street light. State Street lies alongside the Alfred E. Smith State Office Building and Swan Street is immediately in front thereof. Title to the ground the building stands on and to the sidewalks adjoining, including all of Swan Street, was proven to be in the State. The responsibility for the maintenance and repair of those sidewalks was admitted to be the State’s. There is a raised curbing around the building which is laid about eight or nine feet away from the building. The intervening space is covered with grass and ground ivy. The sidewalk ends against the building curbing. This sidewalk is laid in squares generally averaging 60 inches on its sides and 5 to 6 inches thick. The square closest to the curbing and located about the line of intersection of the State Street and Swan Street sidewalks is ‘ ‘ settled ’ ’ below the original level at which it had been built, so that the cement flags at its sides remain higher. The measured difference between the level of these cement flags, according to the photographer for claimant, was from “ about ” one inch between the level flag on the State Street side and the depressed flag, and one inch between the depressed flag and the one on the north of it, and less than one inch between the other flags.
In addition thereto, through testimony and exhibits, the claimants presented proof of some chipping away of the edge of the flag north of the depressed flag showing an old break. The State superintendent of the building, who has complete charge, stated that he measured the crack between the *241 depressed flag and the one north of it, including the chipped surface. He said the chipped crack was eight inches long, two inches wide and three-eighths inch deep; and added that the deepest portion of the entire crack is three-eighths inch. He asserted that it has been in that condition for many years and does not have to be repaired as it presents no danger. The claimants’ expert, who has been in the paving and contracting business for 22 years, said he would recommend replacement of that part of the sidewalk, but offered no measurements. The superintendent testified that since his appointment in the year 1949, no claim has been made as the result of a fall at the subject location.
The claimant Margaret placed in evidence the shoes she wore on the occasion of her fall. These were regular oxford shoes with Cuban heels. The heels were wide ones. The point of her shoes measured seven-eighths of an inch from bottom of sole to top. She stated that as she and her husband were turning into Swan Street thus shod, the toe of her left shoe became caught in a hole in the sidewalk and “ stuck ” there, causing her to fall toward the curbing. She said her foot became wedged and she pointed to some scuff marks at the top of the point of her left shoe to prove that. She insisted again and again that the whole point of her shoe was caught or wedged in the depression, and that she felt it before she fell. The hole she pointed to was the one described by the superintendent of the building as being eight inches long, two inches wide and three-eighths inch deep.
Her husband, who is employed by the State in that very same building, more or less corroborated his wife’s version of her fall and testified that he lost the services of his wife for at least seven weeks and incurred hospital and medical expenses of $1,186.20.
Upon the request of claimants, eventuating into a stipulation and consent of the claimants and the State, the court viewed the scene of the accident and upon such stipulation and consent used the photographs in evidence at the time of the inspection of the property.
The medical testimony indicates that the claimant Margaret sustained a fracture of the left hip. Although she had suffered a fracture of the left hip in 1941 and had been disabled then for about one year, she had no residual difficulties thereafter, and there was no evidence of any connection between that injury and the instant injury. There was conflicting testimony as to whether or not an arthritic condition in the dorsal and lumbar regions was a result of the accident herein.
*242 The question to be determined is whether the State was negligent in its maintenance of the sidewalk. The State is charged with the responsibility of keeping the sidewalk as level as possible, traversable and without defects which might constitute a danger to the public. It must keep the sidewalk in a condition reasonably safe for pedestrians. It need not, however, maintain the sidewalk in that condition of smoothness and polish which one might find upon a ballroom floor.
In the case of Loughran v. City of New York (298 N. Y. 320, 321-322), the court held that “ there is no rule that the liability of a municipality in a case of this sort turns upon whether the hole or depression, causing the pedestrian to fall, is four inches • — ■ or any other number of inches ■— in depth or constitutes ‘ a trap.’ (See, e.g., Norbury v. City of Buffalo, 246 N. Y. 605; Wilson v. Jaybro Realty & Development Co., 289 N. Y. 410; Dowd v. City of Buffalo, 290 N. Y. 895; Lynch v. City of Beacon, 295 N. Y. 872; Pratt v. Village of Seneca Falls, 295 N. Y. 690.) As we but recently observed, there is no requirement that ‘ a hole in a public thoroughfare * * * be of a particular depth before its existence can give rise to a legal liability.’ (Wilson v. Jaybro Realty & Development Co., supra., p. 412.) A municipality’s liability depends on whether or not, having* in mind the circumstances of each case, it has neglected and failed to keep its public thoroughfares — whether the sidewalk of a street or the pathway in a park — in a condition reasonably safe for pedestrians.”
An examination of the exhibits, the inspection by the court of the sidewalk, and the consideration of all of the testimony convince the court that the separation between the cement flags, the chipped part of the flag in question and the variations in the level of the cement flags were not such as to constitute any negligence on the part of the State.
Further, assaying all of the evidence, the court finds it a physical impossibility for the point of claimant Margaret’s shoe to have been wedged or stuck in the chipped area of the sidewalk. The testimony shows conclusively that there was no sharp edge or hollow protrusion between the flags, nor was there a sufficient difference in elevation to cause the point of her shoe, seven-eighths inch high, to have been wedged or stuck.
Since the State has been found not to have been negligent, it is unnecessary to pass upon the question of contributory negligence of the claimant Margaret.
The motions to dismiss made by the State upon which decision was reserved, are hereby granted.
*243 Both claims are dismissed.
This constitutes the decision of the court in accordance with the provision of section 440 of the Civil Practice Act.
Let judgments be entered accordingly.
Claimants may submit findings within 20 days.